# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

MAY 1997 SESSION



**FILED**

**December 23, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9607-CC-00272 |
| | ) | |
| vs. | ) | Anderson County |
| | ) | |
| **RICHARD ALLEN KIDD II,** | ) | Hon. James B. Scott, Jr., Judge |
| | ) | |
| Appellant. | ) | (Rape) |


FOR THE APPELLANT:

J. THOMAS MARSHALL, JR.
District Public Defender

NANCY MEYER
Asst. District Public Defender
101 S. Main St., Ste. 450
Clinton, TN 37716

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

CLINTON J. MORGAN
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

JAMES N. RAMSEY
District Attorney General

JANICE G. HICKS
Asst. District Attorney General
127 Anderson Co. Courthouse
Clinton, TN 37716


OPINION FILED: _____


**AFFIRMED**


CURWOOD WITT
JUDGE

## OPINION

The defendant, Richard Allen Kidd II, appeals his conviction of rape following a jury trial in Anderson County Criminal Court.  Kidd is currently serving a ten year sentence for his crime in the Department of Correction.   In this direct appeal, he raises three issues for our consideration:

1.    Whether the indictment is fatally insufficient in that it does not contain an allegation of the requisite mental state.

2.    Whether the trial court erred in allowing the state's exhibits to be published to the jury where they were never formally introduced by motion into evidence.

3.    Whether the trial court erred in imposing a ten year sentence.

Following a review of the record and the briefs of the parties, we affirm the judgment of the trial court.


At trial, the state's evidence[1] established that Kidd and the victim[2] dated and lived together.  By all accounts, the two had a stormy, physically violent relationship.  At the time of the offense, the victim was dating someone else.  She and Kidd were no longer living together, and although he had spent the night at her trailer home on some occasions since their breakup, she had informed him he was no longer welcome prior to the events that form the basis for his conviction.


In the early morning hours of November 30, 1994, the victim awoke to find Kidd in her home. The victim noticed Kidd was intoxicated.  She asked him to leave, but Kidd made advances toward her.  A protracted struggle ensued, with both parties receiving injuries.  Ultimately, Kidd vaginally raped the victim.  After the attack, Kidd fell asleep or passed out, and the victim, who did not have a telephone, escaped her trailer and went to a grocery store, where she called 911 and alerted the authorities to the crime that had just occurred.  Responding officers found Kidd asleep or passed out in the victim's home and took him into custody.

---

[1]The defendant has not challenged the sufficiency of the convicting evidence.

[2]The victim's name is not pertinent to this appeal.

# I

In an issue raised for the first time on appeal, Kidd questions whether the indictment against him sufficiently alleges the crime of rape. He relies on this court's opinion in State v. Roger Dale Hill, No. 01C01-9508-CC-00267 (Tenn. Crim. App., Nashville, June 20, 1996), perm. app granted (Tenn., Jan. 6, 1997) and State v. Nathaniel White, No. 03C01-9408-CR-00277 (Tenn. Crim. App., Knoxville, June 7, 1995). Since the filing of the defendant's brief, our supreme court has reversed this court's decision in Hill. See State v. Hill, --- S.W.2d ---, No. 01-S-01-9701-CC-00005 (Tenn. Nov. 3, 1997).

The question raised in Hill is whether a charging instrument which charges a defendant with a crime that by its statutory terms does not expressly require a culpable mental state is legally sufficient under the Sentencing Reform Act of 1989, where the instrument does not allege a culpable mens rea. Hill, --- S.W.2d at ---, slip op. at 2. The Sentencing Reform Act of 1989 requires a culpable mental state in order to establish an offense unless the statutory definition of the crime "plainly dispenses with a mental element." Tenn. Code Ann. § 39-11-301(b) (1997).

The supreme court in Hill said that a charging instrument which does not allege a culpable mental state, the statutory definition of the crime not plainly dispensing with a mental element, is nevertheless sufficient to support prosecution where

> (1)     the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from double jeopardy;
>
> (2)     the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and
>
> (3)     the mental state can be logically inferred from the conduct alleged.

Hill, --- S.W.2d at ---, slip op. at 3. The supreme court scrutinized the Hill indictment under the three-part inquiry above and determined the indictment was legally sufficient to support prosecution of the accused, notwithstanding the absence of an

3

explicit allegation of a mens rea. Hill, --- S.W.2d at ---, slip op. at 4-10. Specifically, the supreme court noted, "[T]he act for which the defendant is indicted, 'unlawfully sexually penetrat[ing]' a person under the age of thirteen, is committable only if the principal actor's mens rea is intentional, knowing or reckless. Thus, the required mental state may be inferred from the nature of the criminal conduct alleged." Hill, --- S.W.2d at ---, slip op. at 9.

We find the case at bar very similar under the Hill analysis. The statute proscribing the offense does not require a specific culpable mental state. See Tenn. Code Ann. § 39-13-503(a)(1) (1997). The indictment in this case alleges the defendant "unlawfully and forcibly engage[d] in unlawful sexual penetration of [the victim], in violation of T[ennessee] C[ode] A[nnotated section] 39-13-503, against the peace and dignity of the State of Tennessee."[3] In pertinent part, "Rape is unlawful sexual penetration of a victim by the defendant . . . accompanied by force or coercion . . . to accomplish the act . . . ." Tenn. Code Ann. § 39-13-503(a)(1) (1997).

The indictment in this case closely follows the statutory language describing the crime. It complies with the statutory form by stating the "facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . ." See Tenn. Code Ann. § 40-13-202 (1997); Hill, --- S.W.2d at ---, slip op. at 3. Further, the mental state is capable of logical inference from the conduct alleged. See Hill, --- S.W.2d at ---, slip op. at 3; see also State v. Marshall, 870 S.W.2d 532, 537-38 (Tenn. Crim. App. 1993). As the supreme court noted in Hill, the allegation of "unlawfully sexually penetrat[ing]" a victim necessarily requires an intentional, knowing or reckless mens

_____

[3]The language of this indictment is virtually identical to the language of the indictment in Hill, though the defendant in Hill was indicted for aggravated rape and Kidd was indicted for rape.

4

rea. <u>Hill</u>, --- S.W.2d at ---, slip op. at 9. Therefore, the allegation raises an inference of the required mental state. <u>Hill</u>, --- S.W.2d at ---, slip op. at 9.

Accordingly, the indictment satisfies the three <u>Hill</u> requirements for sufficient allegations to support prosecution. <u>See</u> <u>Hill</u>, --- S.W.2d at ---, slip op. at 3. Kidd is not entitled to relief on this basis.

In passing, we note that <u>Nathaniel White</u>, relied upon by the defendant, is not applicable. In <u>Nathaniel White</u>, the statute proscribing possession of marijuana set forth a specific culpable mental state of "knowing". <u>See</u> Tenn. Code Ann. § 39-17-418(a) (Supp. 1994). The rationale in <u>Nathaniel White</u> for dismissing a count that did not allege the possession as knowing is not applicable to the present case which, like <u>Hill</u>, involves a statute that "omits a reference to a specific <u>mens</u> <u>rea</u>." <u>Hill</u> --- S.W.2d at ----, slip op. at 2. <u>Hill</u> controls the result in the present case.

## II

In his second issue, Kidd claims the trial court erroneously allowed the state's exhibits to be published to the jury without the exhibits having been formally admitted into evidence. The state makes a variety of waiver arguments[4] and ultimately says any error is no more than harmless.

The record reflects a somewhat relaxed approach to trial practice and procedure in this matter. During its case-in-chief, the state referred to a variety of exhibits and had these exhibits marked for identification. The exhibits, including several photographs, two items of the victim's clothing, and correspondence from the defendant to the victim, were authenticated by the witness, but the state never moved that these exhibits be received into evidence. The record reflects that prior

---

[4]We find the state's waiver arguments which relate to the sufficiency of the defendant's brief on this issue lacking in merit, though we decline to belabor the point with lengthy analysis.

to these exhibits being passed to the jury, the prosecutor requested that the court allow publication of the exhibits, which the court allowed in each challenged instance. The defendant offered no objection to this procedure for the first several exhibits. When defense counsel eventually objected, she acknowledged her failure to object promptly to publication of the previous exhibits. The court overruled the objection, explaining that it considered the state's request that the exhibits be published to the jury sufficient to allow such.

The proper procedure for admission of tangible items of evidence has been aptly summarized by one commentator:

> An attorney who wants to introduce an exhibit at trial should (a) ask the court reporter or other court officer to mark the exhibit for identification (exhibits should be marked numerically and sequentially without reference to the proponent); (b) show the exhibit to adversary counsel (this should be reflected in the record), thereby giving him the opportunity to raise objections before foundation questions and answers suggest inadmissible matter; (c) either obtain the court's permission to approach the witness to deliver the exhibit for his inspection, or, if required by court rule, ask that a court official present the exhibit to the witness; (d) lay the proper foundation for the admission of the exhibit, including proof of authenticity (in doing so, leading questions are appropriate because laying a foundation is a preliminary matter); and (e) then request that the exhibit be introduced into evidence. If the request for admission is for limited purposes, this should be stated in the request.

Lawrence A. Pivnick, Tennessee Circuit Court Practice § 24-12, at 703-04 (4th ed. 1995). The jury is entitled to review those exhibits which have been admitted as evidence in the case. See State v. Ricky Dean Cole, No. 03C01-9604-CC-00171, slip op. at 5 (Tenn. Crim. App., Knoxville, July 29, 1997) (inadvertent publication to jury of exhibit marked for identification only was harmless error); Waits v. Dalton, No. 01-A-01-9407-CV-00317 (Tenn. App., Middle Section, Jan. 27, 1995) (exhibits marked for identification only were properly excluded from exhibits given to jury for use in deliberations). Those principles notwithstanding, objection to introduction of evidence is waived absent a contemporaneous objection to its admission. Tenn. R. Evid. 103(a)(1).

We find that the defendant waived any objection to the irregularity to

6

the extent contemporaneous objections were not interposed to the state's motions to publish the exhibits to the jury. Further, to the extent the defendant offered a timely objection, we find the trial court's irregular procedure for receiving evidence falls short of an abuse of its discretion in such matters. See, e.g., State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994) (trial court's decision regarding admissibility of evidence will not be disturbed on appeal absent an abuse of discretion).

Additionally, we reject the defendant's argument that any alleged error was so egregious as to deprive the defendant of his right to a fair and impartial jury trial and resulted in such prejudice to the judicial process that reversal is required. Any arguable error by the trial court was harmless. The defendant has made no showing that any of the exhibits which were published to the jury were inadmissible under the Rules of Evidence. As such, we find no reversible error in the proceedings as to this issue.

## III

In his final issue, Kidd complains of the trial court's application of enhancement factors and failure to find certain mitigating factors in sentencing him to a mid-range ten year incarcerative term.

When a defendant challenges the sentence imposed by the trial court, this court engages in a de novo review of the record with a presumption the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and

**7**

enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (1997); Ashby, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

The record in this case fails to demonstrate that the trial court considered the principles of sentencing as well as the relevant facts and circumstances. Moreover, the trial court failed to place on the record any enhancement and mitigating factors it found, as required by the Sentencing Act. See Tenn. Code Ann. § 40-35-210(f) (1997). It is necessary for the trial court to note its findings relative to these principles and factors affirmatively on the record in order for this court to undertake meaningful review of the propriety of the defendant's sentence. Because the court did not do so, we conduct our review de novo unaccompanied by the presumption of correctness.

Kidd stands before the court a Range I offender convicted of a Class B felony. As such, he faces a sentence of eight to twelve years. By his own admission, he has prior convictions for reckless driving and DUI. In addition, there is evidence of other criminal conduct by the defendant, including drug use. As such, enhancement factor (1), "the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" applies. See Tenn. Code Ann. § 40-35-114(1) (1997). Likewise, there is evidence "[t]he defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community," his presentence report reflecting a probation violation that was unchallenged at the sentencing hearing. Factor (8) applies. See Tenn. Code Ann. § 40-35-114(8) (1997).

Turning to the mitigating factors, we reject the defendant's argument he lacked substantial judgment in committing the offense due to his youth. See

**8**

Tenn. Code Ann. § 40-35-113(6) (1997). Our supreme court has noted that in passing on the propriety of this factor, "courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). The defendant was 22 at the time of his crime. Though he is lacking in formal education, having quit school in the seventh grade, there has been no showing of any deficiency in maturity, mental capacity or other circumstance which might reflect on his ability to exercise "substantial judgment" and appreciate the nature of his action. Additionally, Kidd was experienced beyond his years with the criminal justice system. We decline to apply this factor.

The defendant also claims the court should have mitigated his sentence because he was a victim of child abuse. Tenn. Code Ann. § 40-35-113(13) (1997). The evidence relating to physical abuse by the defendant's father when he was an infant and toddler and physical and verbal abuse by his stepfather, as well as the defendant's appellate argument in this regard, fail to convince us that this factor should be applied. It is noteworthy that despite the history of alleged abuse at the hands of the defendant's stepfather, his evidence at the sentencing hearing was that he would live within the same household as the stepfather if not sentenced to incarceration. This causes the court to question the existence, severity, or deleterious effects of the alleged abuse. Moreover, there is, at best, minimal evidence that the defendant's crime is somehow related to the child abuse he alleges he suffered. As such, we decline to mitigate his sentence based upon this factor.

In mitigation of the offense, the trial court appears to have relied on the fact that the victim and the defendant had a physically violent relationship. Even if we were to accept the defendant's evidence at face value as to the on-going

nature of the relationship and the victim's participation in domestic violence, there is absolutely no evidence tending to mitigate the sexual assault the defendant perpetrated on the victim. At most, the victim may have injured the defendant by grabbing and scratching his penis during the struggle that took place on the date in question, but rape was by no means a justified response. Unlike the trial court, we decline to mitigate the defendant's sentence based upon this factor.

Bearing in mind all the matters that are to be considered, including the statutory principles of sentencing and the facts and circumstances of this case, we believe the enhancement factors are entitled to substantial weight. Coupled with the absence of applicable mitigating factors, we believe Kidd justly deserves more than a minimum sentence for his crime. Ultimately, we agree with the trial court that a ten year sentence is appropriate,[5] though we have departed from the trial court's rationale in reaching this conclusion.

In conclusion, we find all of Kidd's issues lacking in merit. The judgment of the trial court is affirmed.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
JOSEPH B. JONES, PRESIDING JUDGE

_____
JOSEPH M. TIPTON, JUDGE

_____

[5]Having received a sentence greater than eight years, Kidd is not entitled to consideration of a probationary sentence. Tenn. Code Ann. § 40-35-303(a) (1997).

**10**